UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HECTOR GONZALEZ,

                        Plaintiff,

     -vs-                    **No. 6:16-cv-06174-MAT**
                                         **DECISION AND ORDER**
CORRECTION OFFICER COBURN, et al.,

                        Defendants.
_____

## I. Introduction

*Pro se* plaintiff Hector Gonzalez ("Plaintiff" or "Gonzalez"), an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Wende Correctional Facility, commenced the instant action pursuant to 42 U.S.C. § 1983 against DOCCS Correction Officers Coburn, Nolan, and John Doe Defendant, Sergeant Olles, Acting Commissioner Anthony J. Annucci, Superintendent Dale Artus, and Deputy Superintendent for Security Stewart Eckert (collectively, "Defendants"). Plaintiff alleges that Defendants subjected him to retaliatory assault and inhumane special contraband watch conditions, and created or enforced policies permitting the assault and inhumane conditions, all in violation of his First, Eighth, and Fourteenth Amendment rights.

## II. Factual Background and Procedural History

Plaintiff alleges that on October 10, 2014, when he was an inmate at Attica Correctional Facility ("Attica"), Correction Officers Nolan, Coburn, and Doe, along with Sergeant Olles,

approached him and ordered him against the wall. (Docket No. 21 ("Am. Compl.") at 5). Thereafter, Coburn allegedly stated, "you like sending grievances to the Superintendent?" (*Id.*).[1] Plaintiff claims that these defendants then proceeded to search Plaintiff, call him racial epithets, and attack him by punching and kicking him to the ground. (*Id.*).

Plaintiff alleges that following the above-described incident, Attica officials falsely charged him with misconduct, and Sergeant Olles placed him in a room on special contraband watch. (*Id.* at 5-6, Ex. B at 1, 3). While on contraband watch, Attica officials allegedly stripped Plaintiff of his normal clothing and required him to wear a hospital gown in its place. (*Id.* at 5). Plaintiff claims that he was not provided with hand soap, toothbrush, toothpaste, or a hand towel. (*Id.*, Ex. C). Plaintiff remained on contraband watch for two months in a room exposing him to cold temperatures, which Defendants referred to as "the Cooler," where they put "an inmate on ice." (*Id.* at 6).

On December 31, 2014, two weeks after Attica officials released Plaintiff from special contraband watch, he filed an Inmate Grievance Complaint. (*Id.*, Ex. B at 3). Plaintiff claimed in his grievance that "Officer Coburn said to me go to the wall," and "once he though[t] it was clear . . . began grabbing me

---

[1] Plaintiff does not identify the grievance that he claims resulted in the assault.

forcefully by my neck . . . hitting me in my ribs and then CO Nolan and other officers put me [in] handcuffs and CO Nolan start[ed] hitting me in my face." (*Id.*). Thereafter, "SGT Ollie [sic] sen[t] [Plaintiff] to [] special watch for 65 days." (*Id.*). Plaintiff requested that the abuse cease and that he be compensated for the 65 days he spent in special contraband watch. (*Id.*).

On January 14, 2015, the Inmate Grievance Review Committee ("IGRC") held a hearing with respect to Plaintiff's grievance in Plaintiff's absence because he was in the Special Housing Unit ("SHU"). (*Id.*, Ex. B at 1). On April 13, 2015, the IGRC denied Plaintiff's grievance. (*Id.*, Ex. B at 2). The IGRC concluded that there was no evidence to support Plaintiff's accusations, and found that staff used an appropriate amount of force. (*Id.*). On May 7, 2015, Plaintiff appealed to Superintendent Artus, claiming the decision was wrong and personnel had pictures and x-rays of the attack. (*Id.*). After Superintendent Artus denied Plaintiff's appeal (*Id.* at 5), he appealed to the Central Office Review Committee ("CORC"). (*Id.*).

The CORC held a hearing on December 16, 2015, and subsequently denied Plaintiff's request for relief. (*Id.*, Ex. B at 1). The CORC reasoned that Plaintiff failed to identify witnesses and had not
3

otherwise presented "sufficient evidence of malfeasance by staff." (*Id.*).[2]

The CORC's decision, which Plaintiff included as an exhibit to the Amended Complaint, also found the facts of the incident differently, stating that Coburn and Nolan conducted a random pat frisk of Plaintiff, and that he resisted the search when he pushed away from the wall. (*Id.*). After these defendants used force to undermine his resistance, the CORC noted, medical staff treated Plaintiff for bruising and swelling to the left orbital area, and abrasions to his right wrist, back, and left shoulder resulting from the incident. (*Id.*). CORC further noted that Attica officials documented the incident with a Misbehavior Report ("MBR"). (*Id.*). On October 19, 2014, nine days after Plaintiff went on special contraband watch, he defecated a plastic package which tested positive for cocaine. (*Id.*). Attica officials released Plaintiff from special contraband watch on December 15, 2014, after he had two negative defecations. The CORC further noted that the Office of Special Housing/Inmate Discipline affirmed the MBR on April 10, 2015. (*Id.*).

Plaintiff then instituted this Section 1983 action, alleging various constitutional violations in connection with the October 10, 2014 retaliatory assault and two-month special contraband

---

[2] The CORC added that DOCCS transferred Plaintiff to a different correctional facility. (*Id.*).

4

watch.  On May 10, 2017, the Court granted Plaintiff's third motion for leave to proceed *in forma pauperis* (Docket No. 10) with the instruction that Plaintiff file an amended complaint.  As a part of its May 10, 2017 order, the Court also requested that the Attorney General ascertain the identity of the John Doe Defendant and an address where Plaintiff could serve him.  *See Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*).  On November 6, 2017, counsel for Defendants, Assistant Attorney General Hillel Deutsch, sent a letter to the Court (Docket No. 23) and explained that "[p]er facility paperwork, only three officers were involved in the incident," but "[i]f Plaintiff believes an additional individual was involved, a physical description will be useful to determine" the officer's identity.  The Court is unaware of whether Plaintiff has provided a physical description of the John Doe defendant to counsel for Defendants, but the identity of the John Doe defendant is not dispositive with respect to the outcome of the present motion.  Plaintiff filed the Amended Complaint (Docket No. 21) on October 4, 2017.

Currently pending before the Court is Defendants' partial Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants move to dismiss Plaintiff's First Amendment retaliation claim as to all Defendants. (Docket No. 22-1 at 1, 4).  Defendants also move to dismiss Plaintiff's claim that Acting Commissioner Anthony J. Annucci ("Annucci"), Superintendent Dale Artus

5

("Artus"), and Deputy Superintendent for Security Stewart Eckert ("Eckert") (collectively, "the Supervisory Defendants") created and enforced policies and procedures which allowed Attica officials to subject him to retaliatory assault and special contraband watch under cold conditions in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment. (*Id.* at 1). Defendants do not seek to dismiss Plaintiff's claims against Correction Officers Coburn, Nolan, and John Doe or Sergeant Olles for the use of excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff failed to file any opposition to Defendants' motion.

For the reasons that follow, Defendants' partial Motion to Dismiss is granted.

**III. The Rule 12(b)(6) Standard**

The function of a motion to dismiss pursuant to Rule 12(b)(6) is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

6

(2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 556 U.S. at 679, and draw every reasonable inference in favor of the plaintiff, *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). Where, as here, the plaintiff is proceeding *pro se*, his complaint and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**IV. Elements of a Section 1983 Claim**

Under Section 1983, "'anyone acting under color of any [state] statute, ordinance, regulation, custom, or usage,' who causes a United States citizen to be deprived 'of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'" *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting 42 U.S.C. § 1983). A plaintiff seeking relief under § 1983 "must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the

plaintiff of a right guaranteed under the Constitution." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

**V. Personal Involvement**

Defendants contend that Plaintiff fails to allege the personal involvement of Annucci, Artus, and Eckert with respect to their violation of his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process when they created and enforced policies and procedures which allowed Attica officials to place Plaintiff in special contraband watch under cold conditions. Specifically, Defendants argue that Plaintiff does not allege what the purported policies were, how or when they were created, or what involvement Annucci, Artus, and Eckert had in the creation of the policies. Moreover, Plaintiff does not allege that these defendants were aware of these purported policies being enforced generally or as applied to his case specifically.

**A. Legal Standard**

Under Section 1983, supervisor liability "requires some personal involvement or responsibility." *Guillory v. Cuomo*, 616 F. App'x 12, 13 (2d Cir. 2015) (unpublished opn.). This can be shown by: (1) "actual direct participation in the constitutional violation," (2) a "failure to remedy a wrong after being informed through a report or appeal," (3) the "creation of a policy or custom" sanctioning "conduct amounting to a constitutional violation, or allowing such a policy or custom to continue,"

8

(4) "grossly negligent supervision of subordinates" committing a constitutional rights violation, or (5) a "failure to act on information indicating that unconstitutional acts were occurring." *Guillory*, 616 F. App'x at 13 (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

B.  **Discussion**

Here, Plaintiff has failed to plead any facts that plausibly allege personal involvement on the part of Annucci, Artus, and Eckert. Plaintiff alleges that these defendants "created and/or enforced policies and procedures" that allowed Plaintiff's constitutional rights violations in connection with the special contraband watch (Am. Compl. at 6). Essentially, Plaintiff alleges there was an unidentified policy that led to the violation of his constitutional rights. This is insufficient to state a claim. *See, e.g.*, *Youngblood v. City of New York*, No. 15-3541, 2016 WL 3919650, at *5 (S.D.N.Y. June 27, 2016) (concluding *pro se* plaintiff's "bare allegations of the existence of a custom and policy and his conclusory assertion that the policy was linked to his constitutional injuries are insufficient to state a *Monell* claim"). Plaintiff does not identify any specific policies or procedures created by Annucci, Artus, and Eckert, their role in creating them, how or when these defendants allegedly created them, or any allegations suggesting that these defendants were aware that prison officials enforced them against Plaintiff. Thus, Plaintiff's allegations are conclusory, not plausible on their face, and not

9

entitled to the assumption of truth on a motion to dismiss. *See Iqbal*, 556 U.S. at 679; *Carpinone v. City of New York*, No. 11-2074, 2012 WL 760073, at *2 (S.D.N.Y. Mar. 9, 2012) ("Plaintiff offers no facts which would render plausible his allegations of a policy or custom within the New York City Police Department that was affirmatively linked to the purported constitutional violations he suffered.").

In support of his argument, Plaintiff includes a single-page excerpt of DOCCS' 25-page Directive # 4910, Control of & Search for Contraband (effective through November 6, 2017) and underlines on the page the words "48 hours" and "written approval of the Superintendent or his or her designee." (Am. Compl., Ex. C). The underlined language appears in a discussion of the length of time an inmate may be held on special contraband watch or temporary isolation. (*Id.*). Succinctly, the Directive provides that an inmate shall not be held in special contraband watch or temporary isolation for more than 48 hours unless (1) he fails to have two defecations negative for contraband during the first 48 hours, or (2) a radiological detection search finds contraband in his body, in which case he may be held for up to seven days with written approval of the Superintendent or a designee. Interpreting the underlined language in order to "raise the strongest arguments," *Soto*, 44 F.3d at 173, Plaintiff appears to contend that Defendants wrongfully held him in isolation without the approval of the Superintendent or a designee. Although this implies actual, direct

10

participation by the Supervisory Defendants, Plaintiff does not allege that any of the Supervisory Defendants in his case ordered a radiological detection search. Because his detention was not based on a radiological detection search ordered by a Superintendent or designee, the subsection of Directive #4910 requiring the Superintendent's written approval for a stay exceeding 48 hours does not apply. Moreover, the CORC decision indicates that Plaintiff did not have two defecations negative for contraband within the first 48 hours, and therefore special contraband watch officials held him until he had two negative defecations in accordance with Directive #4910, which does not require approval by a supervisory official. (Am. Compl., Ex. B at 1).

Because Plaintiff has failed to plausibly allege any personal involvement by Annucci, Artus, and Eckert in the alleged deprivation of his rights, *Guillory*, 616 F. App'x at 13, Plaintiff fails to state a claim against them for violation of his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process. Thus, his claims against Annucci, Artus, and Eckert must be dismissed.

**VI. Exhaustion**

Defendants also contend that Plaintiff has failed to exhaust his administrative remedies, and that therefore the Court should dismiss (1) his First Amendment retaliation claim as to all

11

Defendants, and (2) all other claims against Annucci, Artus, and Eckert.

## A. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court recently held that, "aside from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust-irrespective of any "special circumstances."'" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850 (2016)).

The Supreme Court in *Ross* provided three circumstances where an administrative remedy is not available. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative

12

scheme might be so opaque that it becomes, practically speaking, incapable of use,'" i.e., "no ordinary prisoner can discern or navigate it." *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1860). The Second Circuit noted that *Ross* did not appear to suggest that these three circumstances are exhaustive. *Id.* at 123 n.2.

**B. Discussion**

DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is a prerequisite condition to bringing a Section 1983 action in federal court. *See Porter*, 534 U.S. at 524. At the first step, an inmate shall file a complaint with the IGRC. NYCRR, tit. 7, § 701.5(a)-(b). At the second step, an inmate that is not satisfied with the resolution of the matter by the IGRC may appeal to the Superintendent. *Id.* § 701.5(c). The third and final level involves an appeal by the inmate of the facility superintendent's written decision to the CORC. *See id.* § 701.5(d). "The CORC functions on behalf of the commissioner and under his authority." *Id.*

13

### 1. First Amendment Retaliation Claim as Against All Defendants

"A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). Based on an examination of the Amended Complaint and its attending exhibits, the Court agrees that Plaintiff has failed to exhaust his administrative remedies as to his First Amendment retaliation claim with respect to all Defendants and as to all remaining claims against Annucci, Artus, and Eckert. However, because the Court has already dismissed all other claims against Annucci, Artus, and Eckert based on a lack of plausible allegations of personal involvement, the Court will only address Plaintiff's First Amendment retaliation claim.

In New York, "[i]n addition to the grievant's name, department identification number, housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received." NYCRR, tit. 7, § 701.5(a)(2). Interpreting these requirements, the Second Circuit has said that "if prison regulations do not prescribe any particular content for inmate grievances, a grievance suffices if

14

it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (internal quotation and citation omitted).

The Inmate Grievance Complaint filed by Plaintiff does not allege any facts suggesting that Correction Officers Coburn, Nolan, and John Doe, and Sergeant Olles subjected him to excessive force and confinement on special contraband watch for retaliatory reasons. Plaintiff's grievance simply detailed the assault and stated that Sergeant Olles thereafter placed him on special contraband watch. For his relief requested, Plaintiff stated in the grievance that he wanted "the abuse to stop," and to be compensated for the 65 days he spent on special contraband watch. <u>Contrast</u> <u>with</u> <u>Varela v. Demon.</u>, 491 F. Supp.2d 442, 448 (S.D.N.Y. 2007) (inmate exhausted retaliation claim where, although grievance did not use the word "retaliation," "fairly read, it does suggest that the assault occurred in response to Varela's prior complaint to Demons supervisors" since it stated that "Demon. said, on the day before the assault: 'Since you like to cry to my superiors, I'm going to show you who the real boss around here is. Your time will come soon'") (citation to record omitted).

Moreover, nothing in the Amended Complaint (or elsewhere in the record before the Court) suggests that the three-tiered

15

administrative review and appeals system for prisoner grievances maintained by DOCCS was not *available* to Plaintiff. *See Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1859-60). Specifically, Plaintiff does not allege, and his exhibits do not show, that the administrative review and appeals system would have been a dead-end for Plaintiff. *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it. *Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). Moreover, after filing his Inmate Grievance Complaint, a prison official investigated Plaintiff's grievance, interviewed Plaintiff, reviewed written memoranda from staff named in the grievance, and reached the conclusion that Defendants used appropriate force. (Am. Compl., Ex. B at 2). After reviewing the pertinent facts, the CORC concurred with this conclusion, explaining that it had "not been presented with sufficient evidence of malfeasance by staff." (Am. Compl., Ex. B at 1). Nor is there anything in the appeal process to suggest that any administrators attempted to thwart Plaintiff's efforts to resolve his grievance administratively. *See Williams*, 829 F.3d at 123-24 (quoting *Ross*, 136 S. Ct. at 1860). The Court acknowledges that the CORC ultimately "functions on behalf of the Commissioner," NYCRR, tit. 7 § 701.5(d). However, Plaintiff fully availed himself of the grievance appeal process in connection with

the October 2014 excessive force incident and the subsequent two-month special contraband watch.  Thus, even crediting Plaintiff's allegations and exhibits, nothing suggests that the process was otherwise unavailable with respect to Plaintiff's claim of retaliation.

The Court therefore finds that Plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim, and the claim is dismissed as to all Defendants.

**VI. Conclusion**

For all the foregoing reasons, Defendants' limited Motion to Dismiss is granted with respect to Plaintiff's First Amendment Claim as to all Defendants.  Furthermore, Defendants' limited Motion to Dismiss is granted as to all claims against defendants Annucci, Artus, and Eckert.  Plaintiff's excessive force claim remains pending against defendants Coburn, Nolan, Olles, and John Doe.  The Clerk of the Court is directed to terminate defendants Annucci, Artus, and Eckert from the case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 20, 2017
         Rochester, New York.