```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

HECTOR GONZALEZ,

                Plaintiff,      **No. 6:16-cv-06174-MAT**
                                           **DECISION AND ORDER**
    -vs-

CORRECTION OFFICER COBURN, et al.,

                Defendants.

_____

**I.   Introduction**

*Pro se* plaintiff Hector Gonzalez ("Plaintiff" or "Gonzalez"), an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Wende Correctional Facility, commenced the instant action pursuant to 42 U.S.C. § 1983 against DOCCS Correction Officers ("CO") Coburn, Nolan, and John Doe Defendant, Sergeant Olles, Acting Commissioner Anthony J. Annucci, Superintendent Dale Artus, and Deputy Superintendent for Security Stewart Eckert (collectively, "Defendants"). Plaintiff alleges that Defendants subjected him to retaliatory assault and inhumane special contraband watch conditions, and created or enforced policies permitting the assault and inhumane conditions, all in violation of his First, Eighth, and Fourteenth Amendment rights.

**II.  Factual Background and Procedural History**

Plaintiff alleges that on October 10, 2014, when he was an inmate at Attica Correctional Facility ("Attica"), Correction Officers Nolan, Coburn, and Doe, along with Sergeant Olles, approached him and ordered him against the wall. Docket No. 21 ("Am. Compl.") at 5. Thereafter, Coburn allegedly stated, "[Y]ou like sending grievances to the Superintendent?" *Id.* Plaintiff claims that these defendants then proceeded to search Plaintiff, call him racial epithets, and attack him by punching and kicking him to the ground. *Id.*

Plaintiff alleges that following the above-described incident, Attica officials falsely charged him with misconduct, and Sergeant Olles placed him in a room on special contraband watch. Am. Compl. at 5-6, Ex. B at 1, 3. While on contraband watch, Attica officials allegedly stripped Plaintiff of his normal clothing, required him to wear a hospital gown, and did not provide him with hand soap, toothbrush, toothpaste, or a hand towel. Plaintiff remained on contraband watch for two months in a room exposing him to cold temperatures.

On December 31, 2014, two weeks after being released from special contraband watch, Plaintiff filed an Inmate Grievance Complaint. Am. Compl., Ex. B at 3. Plaintiff claimed in his grievance that "Officer Coburn said to me go to the wall," and "once he though[t] it was clear . . . began grabbing me forcefully by my neck . . . hitting me in my ribs and then CO Nolan and other

officers put me [in] handcuffs and CO Nolan start[ed] hitting me in my face." *Id.* Thereafter, "SGT Ollie [sic] sen[t] [Plaintiff] to [] special watch for 65 days." *Id.* On January 14, 2015, the Inmate Grievance Review Committee ("IGRC") held a hearing in Plaintiff's absence because he was in the Special Housing Unit ("SHU"). On April 13, 2015, the IGRC denied Plaintiff's grievance. The IGRC concluded that there was no evidence to support Plaintiff's accusations and that staff used an appropriate amount of force.

On May 7, 2015, Plaintiff appealed to Superintendent Artus, claiming the decision was wrong and personnel had pictures and x-rays of the attack. After Superintendent Artus denied Plaintiff's appeal, he appealed to the Central Office Review Committee ("CORC"). The CORC held a hearing on December 16, 2015, and subsequently denied Plaintiff's request for relief. The CORC reasoned that Plaintiff failed to identify any witnesses and had not otherwise presented "sufficient evidence of malfeasance by staff." *Id.*

The CORC's decision, which Plaintiff included as an exhibit to the Amended Complaint, also found the facts of the incident differently, stating that Coburn and Nolan conducted a random pat frisk of Plaintiff, that he resisted the search by pushing away from the wall, and that the corrections officers used justifiable force to gain his compliance.

The CORC further noted that the corrections officers

documented the incident with a Misbehavior Report ("MBR") which alleged that on October 10, 2014, Plaintiff was selected by Sergeant Olles for a random pat-frisk. CO Coburn noticed that Plaintiff had a small white object in his mouth; Plaintiff was ordered to spit it out, but he refused. A struggle ensued between Plaintiff and CO Coburn and another CO (either Nolan or Nowicki). When it was over, Sergeant Olles ordered a mouth-search. Plaintiff complied, but there was no contraband found in his mouth. Accordingly, Deputy Superintendent of Security Eckert directed that Plaintiff be placed on contraband watch. See Exhibit A (Docket No. 44-3, pp. 5 to 22 of 26) to Declaration of Hillel Deutsch, Esq. ("Deutsch Ex. A").

On October 19, 2014, nine days after Plaintiff had been placed on special contraband watch, he defecated some plastic packaging which tested positive for cocaine. He was released from special contraband watch on December 15, 2014, after he had two negative defecations. *See* Deutsch Ex. A.

Plaintiff had a Tier III disciplinary hearing which commenced December 29, 2014, and ended on January 15, 2015. Plaintiff was found guilty of the following charges: Violent Conduct, Creating a Disturbance, two counts of Refusing Direct Order, Refuse Search or Frisk, Drug Possession, and Smuggling. However, he was not found guilty of Tampering with Property. See Deutsch Ex. A.

The Office of Special Housing/Inmate Discipline affirmed the

Tier III decision regarding the MBR on April 10, 2015.

Plaintiff then instituted this Section 1983 action, alleging various constitutional violations in connection with the October 10, 2014 retaliatory assault and two-month special contraband watch. On May 10, 2017, the Court granted Plaintiff's third motion for leave to proceed in forma pauperis (Docket No. 10) with the instruction that Plaintiff file an amended complaint. Plaintiff filed the Amended Complaint (Docket No. 21) on October 4, 2017.

Defendants subsequently filed a partial Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff failed to file any opposition to Defendants' motion. In a Decision and Order entered December 20, 2017, the Court granted in part and denied in part Defendants' partial Motion to Dismiss as follows: the First Amendment Claims as to all Defendants were dismissed; Annucci, Artus, and Eckert were dismissed as defendants; and the excessive force claims against defendants CO Coburn, CO Nolan, Sergeant Olles, and John Doe were allowed to proceed.

Defendants filed their Answer (Docket No. 27) to the Amended Complaint, and the parties engaged in discovery under the supervision of Magistrate Judge Jonathan W. Feldman.

Pursuant to the Scheduling/Case Management Order (Docket No. 26), Defendants timely filed their Motion for Summary Judgment (Docket No. 44) seeking dismissal of Sergeant Olles, against whom

Plaintiff asserts only a failure-to-protect claim. Plaintiff filed a Response (Docket No. 51) in opposition to the summary judgment motion, and Defendants filed a Reply (Docket No. 52). The partial summary judgment motion was submitted without oral argument on December 19, 2018. For the reasons discussed below, the partial Motion for Summary Judgment is granted in its entirety.

**III. Summary Judgment Standard**

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Surviving summary judgment requires the nonmovant "to create more than a

'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial[.]'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); emphasis omitted).

**IV. Exhaustion of Administrative Remedies**

    **A.    Legal Standard**

The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court recently held that, "aside from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."'" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850 (2016)).

*Ross* articulated three circumstances where an administrative

remedy is not "available." "First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use,'" i.e., "no ordinary prisoner can discern or navigate it." *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Id.* (quoting *Ross*, 136 S. Ct. at 1860).

A defendant bears the burden of proving that an incarcerated plaintiff failed to exhaust available administrative remedies. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute.") (alterations, citations, and internal quotation marks omitted).

**B. The DOCCS Administrative Review System**

DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* N.Y. COMP. CODES R. &

REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is a prerequisite condition to bringing a Section 1983 action in federal court. *See Porter*, 534 U.S. at 524. At the first step, an inmate must file a complaint with the IGRC. NYCRR, tit. 7, § 701.5(a)-(b). At the second step, an inmate that is not satisfied with the resolution of the matter by the IGRC may appeal to the Superintendent. *Id.* § 701.5(c). The third and final level involves an appeal by the inmate of the facility superintendent's written decision to the CORC. *See id.* § 701.5(d).

The applicable regulations provide that the "'[c]ontent' of the grievance should include the inmate's name, department identification number, housing unit, and program assignment[.]" *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)). The inmate's grievance "must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)) The complaint form supplied by DOCCS "also provides spaces for the inmate to include a '[d]escription of [p]roblem,' which is to be 'as brief as possible,' and the '[a]ction requested.'" *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i); alterations in original).

The Second Circuit has held that under New York's inmate grievance regulations, an inmate is "not required to specifically

REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is a prerequisite condition to bringing a Section 1983 action in federal court. *See Porter*, 534 U.S. at 524. At the first step, an inmate must file a complaint with the IGRC. NYCRR, tit. 7, § 701.5(a)-(b). At the second step, an inmate that is not satisfied with the resolution of the matter by the IGRC may appeal to the Superintendent. *Id.* § 701.5(c). The third and final level involves an appeal by the inmate of the facility superintendent's written decision to the CORC. *See id.* § 701.5(d).

The applicable regulations provide that the "'[c]ontent' of the grievance should include the inmate's name, department identification number, housing unit, and program assignment[.]" *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)). The inmate's grievance "must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)) The complaint form supplied by DOCCS "also provides spaces for the inmate to include a '[d]escription of [p]roblem,' which is to be 'as brief as possible,' and the '[a]ction requested.'" *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i); alterations in original).

The Second Circuit has held that under New York's inmate grievance regulations, an inmate is "not required to specifically

REGS. ("NYCRR") tit. 7, § 701.5. Completion of all three levels is a prerequisite condition to bringing a Section 1983 action in federal court. *See Porter*, 534 U.S. at 524. At the first step, an inmate must file a complaint with the IGRC. NYCRR, tit. 7, § 701.5(a)-(b). At the second step, an inmate that is not satisfied with the resolution of the matter by the IGRC may appeal to the Superintendent. *Id.* § 701.5(c). The third and final level involves an appeal by the inmate of the facility superintendent's written decision to the CORC. *See id.* § 701.5(d).

The applicable regulations provide that the "'[c]ontent' of the grievance should include the inmate's name, department identification number, housing unit, and program assignment[.]" *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)). The inmate's grievance "must contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)) The complaint form supplied by DOCCS "also provides spaces for the inmate to include a '[d]escription of [p]roblem,' which is to be 'as brief as possible,' and the '[a]ction requested.'" *Id.* (quoting N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i); alterations in original).

The Second Circuit has held that under New York's inmate grievance regulations, an inmate is "not required to specifically

identify the responsible parties in his grievance in order to later name them as defendants in this lawsuit." *Espinal*, 558 F.3d at 126, 127. Rather, the inmate "only ha[s] to provide a specific description of the problem." *Id.* at 127 (citing N.Y. COMP. CODES R. & REGS., tit. 7, § 701.7(a)(1)(i)).

### C. Plaintiff Did Not Specifically Grieve a Failure-To-Protect Claim

Defendants argue that the failure to protect claim against Sergeant Olles is unexhausted because it was not presented to prison officials in a matter designed to "alert the prison to the nature of the wrong for which redress [was] sought[.]" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quotation omitted). In particular, Defendants assert that Plaintiff failed to allege in Grievance A-64146-15 any wrongdoing by Sergeant Olles apart from his decision to place Plaintiff on contraband watch. Thus, Defendants reason, Plaintiff's grievance was insufficient to put facility personnel on notice that he was alleging that Sergeant Olles protect him from an assault. After reviewing the relevant records, the Court agrees.

Plaintiff's grievance goes into detail about CO Coburn's actions on the morning of October 10, 2014, during the pat-frisk; Plaintiff asserts that CO Coburn grabbed him by the neck with one hand and hit him in the ribs with the other, after which CO Coburn and an unidentified officer put him on the floor and handcuffed him. *See* Ex. B, Docket No. 44-3, pp. 23-25 of 26. However, the

only mention by Plaintiff of Sergeant Olles on the grievance form is that Sergeant Olles "send [sic] [him] to the special watch do [sic] and the special watch for 65 days thiere [sic] violated the directive 4910." *Id.*, p. 24 of 26. Similarly, in his supporting letter to Superintendent Artus, Plaintiff wrote that after CO Coburn and the other officer put him on the floor, Sergeant Olles "ask[ed] me if I got any contraband and [sic] my mouth I told he [sic] not and thiere [sic] send me to the special watch unit." *Id.*, p. 25 of 26.

While the MBR completed by CO Coburn indicates that Sergeant Olles was present at the time of the use of force, Plaintiff never alleged in the grievance that Sergeant Olles participated in the use of force on October 10, 2014, physically assaulted him in any way, or failed to prevent CO Coburn and the other officer from assaulting him. In his opposition to the summary judgment motion, Plaintiff now asserts that Sergeant Olles "decided to bac[k] away" and thereby failed to protect him from CO Coburn and the other officer. *See* Docket No. 51, ¶ 9. He asserts that, by virtue of the fact that Sergeant Olles was present during the pat-frisk and ensuing use of force, the grievance regarding the use of force incident suffices to exhaust a separate failure to protect claim.

However, courts in this Circuit and elsewhere have held that the grievance of an alleged assault does not constitute an automatic grievance for failure to protect from the same assault,

-11-

which must be grieved separately. *See*, *e.g.*, *Albritton v. Morris*, No. 13-CV-3708(KMK), 2018 WL 1609526, at *11 (S.D.N.Y. Mar. 29, 2018) (inmate's grievance alleged excessive force by defendants Morris, Gonyo, Sawyer, McDonough, and other unnamed officers as a result of complaints he had filed on Morris, Tokarz, several other staff members but grievance did not mention defendants Lee or O'Connor or make reference to any forewarning of any claims regarding the attack—or claims regarding any attack—that the plaintiff made to Lee, O'Connor, or Tokarz; failure to protect claims against Lee, O'Connor, and Tokarz were unexhausted) (citing, *inter alia*, *Thousand v. Corrigan*, No. 15-CV-1025, 2017 WL 1093275, at *4 (N.D.N.Y. Mar. 23, 2017) (finding that the inmate failed to exhaust his failure to intervene claim where he "consistently focused his complaints and allegations on the alleged assault" as opposed to any failure on the part of the non-assaulting defendants)); *see also Colon v. Furlani*, No. 07-CV-6022L, 2008 WL 5000521, at *2 (W.D.N.Y. Nov. 19, 2008) ("Although Colon did file a grievance concerning some underlying matters that tangentially related to that claim, the grievance did not mention anything concerning defendants' failure to protect him from inmate Gourlay. An inmate's failure to file a grievance about a particular matter generally constitutes a failure to exhaust as to that matter.").

Plaintiff also argues that his failure to exhaust should be excused because he was too frightened to include Sergeant Olles'

failure to protect when he grieved the use of force. *See* Docket No. 51, ¶¶ 21-22. While a court must not "weigh the credibility of the parties at the summary judgment stage," when "the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff . . . without making some assessment of the plaintiff's account." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Courts apply this analysis when "'[no] reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint.'" *Id.* at 555 (quoting *Schmidt v. Tremmel*, No. 93 Civ. 8588, 1995 WL 6250, at *10-*11 (S.D.N.Y. Jan. 6, 1995); alterations in original).

Here, the record indicates that Plaintiff did not hesitate to grieve the use of force itself or Sergeant Olles' other alleged actions (which were dismissed in the Court's decision on the Motion to Dismiss). The Court finds that no reasonable person would undertake the suspension of disbelief necessary to give credit to Plaintiff's belated, unsworn assertions that he had no trepidation about filing a grievance complaining about the officers who allegedly actually participated in the assault but was too afraid to assert that Sergeant Olles failed to protect him from these officers.

The Court notes that "a claim may be exhausted when it is closely associated with, but not explicitly mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe v. Julien*, No. 08-CV-893, 2009 WL 2223070, at *4 (S.D.N.Y. July 24, 2009). Here, Sergeant Olles was not even mentioned in the CORC's unanimous denial of Plaintiff's grievance. *See* Ex. B to Docket No. 21, p. 12 of 18.

In sum, facility officials were not properly alerted to Plaintiff's failure to protect claim against Sergeant Olles, and because facility officials did not investigate such a claim in the course of resolving Plaintiff's grievance. Under these circumstances, the Court finds as a matter of law that Plaintiff has failed to exhaust administrative remedies as to the failure to protect claim. *See*, *e.g.*, *Albritton*, 2018 WL 1609526, at *12.

## VI. Conclusion

For the foregoing reasons, Defendants' partial Motion for Summary Judgment (Docket No. 44) is granted, and Sergeant Olles is dismissed as a defendant from this action. Since discovery is complete, the case will be reassigned to an active District Judge for trial on Plaintiff's remaining claims. A separate transfer order will issue. The Clerk of Court is directed to amend the official caption to remove Sergeant Olles as a defendant.

**SO ORDERED.**

s/ Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   May 17, 2019
         Rochester, New York.